**STATE of Missouri, Respondent,**

v.

**Thomas Reed MYERS, Appellant.**

**No. 55908.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 21, 1992.

---

Bradford Kessler, St. Louis, for appellant.

William L. Webster, Atty. Gen., Denise L. Garnier, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant, Thomas Reed Myers, appeals from a jury conviction of first degree assault in violation of § 565.050 RSMo 1986. Defendant was sentenced to eight years' imprisonment. We affirm.[1]

Defendant does not challenge the sufficiency of evidence. Viewed in a light most favorable to the verdict, the evidence at trial established the following facts. On February 22, 1985, the victim, Gene Combs, telephoned his wife, Charmaine Combs, at the residence she shared with the couple's children. The victim and his wife were separated, but he had stayed the night several times that month. Two orders had been issued restraining the victim from entering his wife's residence, but the last order had expired roughly three months earlier.

After he and Mrs. Combs exchanged several telephone calls, the victim called again and a different woman answered, identifying herself as Mrs. Combs' answering service. The victim telephoned Mrs. Combs' residence several more times and received the same response. He became suspicious and walked to the house with a friend, John Russo. Neither man was armed.

The victim and Russo arrived at the residence and noticed an unfamiliar car parked in the driveway. The victim attempted to enter the back door of the house but approached the front door after finding the back door locked. Russo heard a man's voice from within the house say, "He's coming around the front." On their way home from a party at the victim's workplace, two of the victim's acquaintances, Dan Heitman and Bill Boeser, stopped at the house when they saw Russo and the victim. Neither Heitman nor Boeser was armed.

Using his key, the victim entered the house. Russo remained at the door, but Heitman and Boeser followed the victim inside. Boeser and the victim entered the bedroom where the victim's daughter lay sleeping. Boeser remained in the bedroom, and Heitman followed the victim as he approached the kitchen. The victim opened the dining room door and saw a woman pointing a rifle at him. The victim backed out of the room, and defendant appeared, armed with a nine-millimeter pistol. Shots were fired, and a bullet struck the victim in the forearm. Heitman, Boeser, and Russo ran out of the house.

Holding a handgun, defendant exited the house and surrendered to police. A search

---

**1.** We note that defendant does not appeal from the trial court's denial of his Rule 29.15 motion    for post-conviction relief.

of the house yielded several weapons, including a nine-millimeter pistol from which two shots had been fired. Police took defendant into custody and advised him of his *Miranda*[2] rights. Defendant gave the following statement. On the night in question, defendant went to Mrs. Combs' residence with several guns after she contacted him and told him she had been receiving telephone calls. Defendant visited the victim's place of business and returned to Mrs. Combs' residence. Defendant then dressed in camouflage and hid in trees next to the residence in order to observe anyone approaching the house.

Defendant reentered the house, and his wife answered Mrs. Combs' telephone, pretending to be Mrs. Combs' answering service. Defendant stated that shortly thereafter, someone broke into the house through the front door.[3] According to defendant, he shot the victim with a nine-millimeter pistol after the victim came toward him; not certain he had hit the victim with the first shot, defendant fired a second time. During the interview, defendant stated he was not afraid and was in control of the situation at all times.

Defendant did not testify at trial, but presented the testimony of one witness, his wife. Mrs. Myers testified Mrs. Combs had purchased a gun from defendant's gun dealership and was fearful of her husband's violence. Mrs. Myers further testified that Mrs. Combs grew upset after receiving telephone calls from the victim on the night of the shooting. According to Mrs. Myers, the victim entered Mrs. Combs' house in a rage, chanting, "Kill, kill, kill." Although she did not see a gun in the victim's hands, Mrs. Myers testified she was hit by a bullet while the victim stood before her in the dining room with both arms raised.[4] Mrs. Myers further testified that she heard someone say "halt" three times while the victim was coming toward her, and that she pointed a rifle at the victim only after he threatened to kill her. Lastly, Mrs. Myers testified she heard a shot after the victim ran to the kitchen.

After his conviction, defendant filed a motion for new trial on the basis of newly discovered evidence, alleging the state withheld certain files containing exculpatory information and instructed Mrs. Combs not to appear at trial. Pursuant to an order of this court, a hearing on defendant's motion was held on June 24, 1991. From a denial of this motion, defendant appeals.

In his first point, defendant alleges the trial court erred in refusing to grant his motion for new trial on the basis of prosecutorial misconduct. Defendant contends the prosecutor instructed Mrs. Combs not to appear in court and then used Mrs. Combs' absence to her advantage in closing argument. Defendant also claims the prosecutor knowingly concealed exculpatory evidence consisting of four court files which contained adult abuse orders issued against the victim and documents relating to a personal injury suit in which the victim sued defendant and Mrs. Combs. We consider defendant's concealment claim in our review of his second point.

The only evidence defendant offers to support his claim of witness tampering consists of certain deposition testimony Mrs. Combs gave in a civil suit pending before defendant's criminal trial began. In her deposition given March 15, 1989, Mrs. Combs testified she had been called as a witness in defendant's trial, but didn't testify because the prosecuting attorney told her not to appear.[5]

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Two police officers testified there were no signs of forcible entry.

4. Mrs. Myers admitted she did not tell police the victim shot her until six months after the incident; further, she testified she "may have" told one of the officers she was injured when either defendant or another man, Mike Rayburn, fired a shot.

5. Although the legal file is replete with material irrelevant to this appeal, defendant has failed to make the deposition testimony a part of the record. He did include the testimony as an exhibit to his Motion for New Trial on the Basis of Newly Discovered Evidence. Although defendant also failed to include a copy of that

However, when questioned about the testimony at the hearing on defendant's motion for new trial, Mrs. Combs related only a vague recollection of the incident. She testified that either she or her attorney contacted the prosecuting attorney's office to ask whether she was to appear, and "[t]hey said they would call, not to show up *yet*. And that was the extent of it." (Emphasis added). The prosecutor, Phyllis Weber, testified it was not she who spoke to Mrs. Combs at the time of this telephone call, and that she was not aware of any incident wherein Mrs. Combs telephoned the prosecuting attorney's office regarding an appearance at defendant's trial. Weber further testified she contacted Mrs. Combs on only one occasion in order to discuss Mrs. Combs' proposed testimony, and Combs indicated she would not be available and would not appear in court. Weber specifically denied instructing Combs not to appear.

A second prosecutor, J.D. Evans, testified that he on one occasion contacted Mrs. Combs to ask her some questions, at which time Combs stated she didn't want to talk to him. Evans then spoke to Combs' attorney, who stated Combs did not want to be involved in defendant's case. As with Weber, Evans specifically denied instructing Combs not to appear.

Lastly, although it is true that Weber during her closing argument at trial commented on Mrs. Combs' absence, defendant's counsel also did so and, unlike Weber, specifically argued that the state did not call Combs as a witness because she *would not have corroborated its case.* We find no evidence the state caused Combs' unavailability or any evidence to support a finding of misconduct by the state. Further, we have reviewed Mrs. Combs' testimony and find nothing to indicate it could have changed the outcome of the trial. The trial court did not err in refusing to grant defendant's motion for new trial on this basis.

■ In his second point, defendant contends the trial court erred in refusing to grant a new trial on the basis of newly discovered evidence. The determination of whether to grant a new trial on this ground is left to the sound discretion of the trial court, and we review only for an abuse of that discretion. *State v. Klaus*, 730 S.W.2d 571, 580 (Mo.App.1987).

■ To be granted a new trial on the basis of newly discovered evidence, defendant must show: (1) the evidence has come to defendant's knowledge since the trial; (2) it was not due to any lack of diligence on the part of defendant or defendant's counsel that the evidence was not discovered sooner; (3) the evidence is so material it would likely produce a different result upon retrial; and (4) the evidence is not cumulative or relevant merely as impeachment of a witness' credibility. *Id.* A new trial is not mandated unless defendant has met all four criteria. *Id.*

Here, the "newly discovered" evidence defendant presented consists of four St. Louis Circuit Court files which defendant alleges the state hid during the trial. Defendant contends the files contain the orders, expired at the time of the shooting, which restrained the victim from entering his wife's residence; certain unidentified depositions which would have confirmed the victim's alleged propensity for violence; the identities of certain witnesses who could have testified concerning the victim's reputation for violence; and the victim's answer to an interrogatory in a civil suit, stating he was "[s]hot 2/22/85 by relations of wife." Defendant contends this answer would contradict the victim's testimony at trial concerning who shot him and on what date the shooting occurred.[6]

At the hearing on his motion, defendant presented the testimony of his uncle, Don-

motion in the legal file, he did attach it as an exhibit to his Motion for Remand, which was addressed to this court and included in our court file. We note that while the trial court at the hearing on defendant's motion for new trial heard testimony concerning the state's alleged misconduct, the court specifically refused to take judicial notice of the deposition.

6. Again, defendant has failed to include any of the "newly discovered" evidence in the record on appeal. However, as with Mrs. Combs' deposition, defendant included a copy of the interrogatory answer as an exhibit to his Motion for New Trial on the Basis of Newly Discovered Evidence, which was attached as an exhibit to his Motion for Remand addressed to this court.

ald Crangle. Crangle testified that in June, 1987, a St. Louis County file clerk informed him there was nothing on record under either the victim's or Mrs. Combs' names. Crangle further testified that in July or August, 1988, a file clerk informed him there was nothing in the computer except a reference to defendant's trial. Crangle stated he did not again attempt to obtain the files until October 3, 1988, the Monday after appellant's trial. At that time, Crangle was informed the prosecuting attorney's office had checked out the files on September 26, 1988, the first day of defendant's trial. Defendant at no time made a request upon the prosecutor for access to the files.

Clearly, defendant had knowledge of the files' existence before trial. Crangle testified he knew restraining orders existed, and at the time he requested the files, he asked for all adult abuse orders listed under the name of the victim. Further, defendant at trial questioned witnesses concerning the orders and stipulated that there had been two prior orders restraining the victim from entering the family home, the last of which expired on November 30, 1984. Moreover, contrary to defendant's contention, there was testimony at trial that defendant knew of the restraining orders prior to the shooting.

With respect to the depositions that defendant contends would confirm the victim's alleged propensity for violence, defendant has made no showing of materiality. Further, any evidence concerning the victim's alleged propensity for violence was demonstrated at trial through evidence of the restraining orders and through the testimony of defendant's wife, who testified that Mrs. Combs had purchased a gun and that the victim had threatened to kill her son if she and defendant did not stay away from Mrs. Combs. With respect to the witnesses defendant contends would have testified concerning the victim's reputation for violence, defendant offers no explanation why they were not discovered before trial. It appears that due diligence would have made them available for trial, considering that each was a member of the Combs family or a member of the family of Bill Boeser, who was one of the trial witnesses. Their identities could have been discovered.

Lastly, defendant has failed to prove the victim's interrogatory answer is in any way exculpatory. The shooting occurred during the early morning hours of February 23, 1985. We fail to see the exculpatory value in the victim's statement that it occurred a day earlier, and defendant offers no explanation. Similarly, the victim's statement that he was shot by his wife's "relations" does not constitute an admission that someone other than defendant did the shooting. The term "relations" is ambiguous and could refer to acquaintances or friends, a group that in this case would include defendant. Further, we fail to see how the statement is relevant, since defendant admitted the shooting but claimed self-defense. At best, the statement would merely impeach the victim, and newly discovered evidence serving only to impeach a witness' credibility does not warrant a new trial. *Id.* at 581. In this case, no newly discovered evidence entitles defendant to a new trial.

Similarly, we find no evidence in the record to support defendant's claim that the prosecutor engaged in misconduct by knowingly concealing or withholding the files. There is no evidence the prosecutor committed an ethical or discovery violation. Further, even if the prosecutor had failed to make discovery as required, defendant would be entitled to a new trial only if there were a reasonable probability the result of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481, 494 (1985); *State v. Franklin*, 748 S.W.2d 790, 792 (Mo.App.1988). We find no such probability here. Defendant's arguments are patently meritless. Points one and two are denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and KAROHL, J., concur.